**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMSUNG ELECTRONICS CO, LTD,                    No   C-00-4524 VRW

      Plaintiff,                                   FINAL JURY INSTRUCTIONS

      v

COMPAL ELECTRONICS, INC,

      Defendant.

_____/

**United States District Court**
For the Northern District of California

## DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case.  A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case.  To those facts you must apply the law as I give it to you.  You must follow the law as I give it to you in these instructions whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following these instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything I may have said or done during the trial any suggestion as to what verdict you should return--that is a matter entirely up to you.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, Samsung seeks money damages from Compal for allegedly infringing the '273 patent by making, importing, using, selling and offering for sale products that Samsung argues are covered by claims 1 and 3 through 7 of the '273 patent.

Samsung also argues that Compal has actively induced infringement of these claims of the '273 patent by others and contributed to the infringement of these claims of the '273 patent by others.  The products that are alleged to infringe are partially and fully assembled notebook computers with various model numbers.

Compal denies that it has infringed the asserted claims of the patent and argues that, in addition, claims 1 and 3 through 7 are invalid.

Your job is to decide whether the asserted claims of the '273 patent have been infringed and whether any of the asserted claims of the '273 patent are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Samsung to compensate it for the infringement.  You will also need to make a finding whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

1

**United States District Court**

For the Northern District of California

**INTERPRETATION OF CLAIMS**

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

(1)  "ISA-compatible computer":  a computer that can handle ISA standard defined interrupts.  An ISA-compatible computer must be physically capable of handling all ISA standard defined interrupts.

(2)  "conventional alphanumeric keys":  keys that correspond to the letters of an alphabet, the decimal digits and punctuation symbols.

(3)  "conventional function keys":  the function keys identified as F1 through F12.

(4)  "conventional symbol keys":  keys that correspond to conventional symbols, such as @, $, %, ^, &, *.

(5)  "conventional cursor control keys (claims :  Keys identified as the 'Home' key, the 'End' key and the 'left arrow and right arrow' keys.

(6)  "data scan code" and "scan code":  a code number that the keyboard generates whenever a key is depressed or released, said scan code number created by converting a pairing of a row signal and a column signal in the keyboard matrix.

(7) "keyboard controller":  a component, electronically or functionally distinct from the keyboard, that activates interrupts signals in response to receipt of data scan codes from the keyboard and, upon request, transmits the data scan code to the computer.

(8) "keyboard":  an input apparatus containing internal circuitry to output or generate data scan codes.

(9) "coupled to":  joining or fastening one electronically or functionally discrete thing to another.

(10) "first interrupt signal":  the ISA standard IRQ1 interrupt signal which is activated by the keyboard controller in response to the activation of any of the conventional keys.

(11) "second interrupt signal":  any interrupt other than IRQ1.

(12) "first interrupt signal line":  a signal line from the keyboard controller connected to the ISA-compatible computer for transmitting the first interrupt signal.

(13) "second interrupt signal line":  a second, separate signal line from the keyboard controller connected to the ISA-compatible computer for transmitting the second interrupt signal.

(14) "first conventional interrupt handling routine":  a first interrupt handling routine that responds to the first interrupt signal from the keyboard controller by inputting data scan codes originating at the keyboard.

(15) "second non-conventional interrupt handling routine":  a second interrupt handling routine, which, in response to

5

the second interrupt signal inputs an identification of said activated alphanumeric key, and performs a predetermined function selected by the alphanumeric key.

(16) "indexes or indexing":  selects or accesses.

(17) "program":  a handling routine that causes the computer to receive keyboard scan codes from the keyboard controller.

(18) "special routine":  a routine that is executed upon receipt of the second interrupt signal.

(19) "interrupt controller":  a device coupled to the keyboard controller that generates one of a number of interrupt vectors depending on the interrupt signal received.

(20) "interrupt vector":  identifies a particular interrupt signal and also corresponds to an interrupt handling routine.

(21) "indexing one of a plurality of memory locations":  to utilize an interrupt vector to access a memory location corresponding to an interrupt vector.

(22) "indexes a first memory location pointer":  selects or accesses an identifier that corresponds to the start of the first conventional interrupt handling routine.

(23) "indexing a second memory location":  selects or accesses an identifier that corresponds to the start of the second non-conventional interrupt handling routine.

United States District Court

For the Northern District of California

**INFRINGEMENT – BURDEN OF PROOF**

     I will now instruct you on the rules you must follow in deciding whether Samsung has proven that Compal has infringed one or more of the asserted claims of the '273 patent.  To prove infringement of any claim, Samsung must persuade you that it is more likely than not that Compal has infringed that claim.

**United States District Court**

For the Northern District of California

**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Compal has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '273 patent. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether any of Compal's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must find that its dependent claims are also not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its asserted dependent claims have also been infringed.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The

following instructions will provide more detail on these two types
of direct infringement.

**COMPRISING CLAIMS**

The claims of the '273 patent use the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements.

**United States District Court**

For the Northern District of California

**LITERAL INFRINGEMENT**

To decide whether any of Compal's products literally infringe a claim of the '273 patent, you must compare the products with the patent claims and determine whether every requirement of the claim is included in that product.  If so, the product literally infringes that claim.  If, however, a product does not have every requirement in the patent claim, that product does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

**United States District Court**
For the Northern District of California

**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that Compal's products do not literally infringe an asserted patent claim, you must then decide whether the products infringe the asserted claims under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, a product can infringe an asserted patent claim if the product includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Therefore, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim

12

requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement.  The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents.  Yet, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial.  That a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.  Where two elements of the accused product perform a single function of the patented invention, or when separate claim limitations are combined into a single element of the accused product, the doctrine of equivalents may still apply where the differences are insubstantial.

        You may not use the doctrine of equivalents to find infringement if you find that Compal's products are the same as what was in the prior art before the application for the '273 patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

**United States District Court**
For the Northern District of California

**LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS**

Because Samsung made certain claim limitations during the patent application process for the '273 patent, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

The second limitation of claim 1 requires that "said keyboard controller responsive to an activation of said additional function key in combination with at least one of said conventional alphanumeric keys to generate a second interrupt signal."  I have determined that Samsung is not entitled to assert that a non-alphanumeric key is equivalent to an alphanumeric key.

1

United States District Court

For the Northern District of California

## DETERMINATION OF INFRINGEMENT

Taking each claim of the '273 patent separately, if you find that Samsung has proved that it is more likely than not that each and every limitation is present, either literally or under the doctrine of equivalents, in any of Compal's accused products, then you must find that Compal's product infringes that claim.

15

United States District Court

For the Northern District of California

1

2

### INDIRECT INFRINGEMENT – GENERALLY

3

Samsung also argues that Compal contributed to

infringement by another of and induced another to infringe claims 1

and 3 through 7 of the '273 patent.  Compal cannot contributorily

infringe or induce infringement unless Samsung proves that someone

other than Compal directly infringes the patent claim by making,

using, selling, offering for sale or importing a product that

includes all of the requirements of the asserted claims.  If there

is no direct infringement, Compal cannot have contributed to

infringement or induced infringement.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONTRIBUTORY INFRINGEMENT**

Samsung argues that Compal has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Compal, someone other than Compal must directly infringe a claim of the '273 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '273 patent, then contributory infringement exists if:

> (1)   Compal supplied an important component of the infringing part of the product;

> (2)   the component is not a common component suitable for non-infringing use; and

> (3)   Compal supplied the component with the knowledge of the '273 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

17

1

2

### INDUCING PATENT INFRINGEMENT

Samsung argues that Compal has actively induced another to infringe the '273 patent.  In order for there to be inducement of infringement by Compal, someone else must directly infringe a claim of the '273 patent; if there is no direct infringement by anyone, there can be no inducement of infringement.

Active inducement exists if Compal took action that actually induced direct infringement by another.  Compal cannot be liable for inducing infringement if it was not aware of the existence of the '273 patent.

**United States District Court**

For the Northern District of California

**WILLFUL INFRINGEMENT**

In this case, Samsung argues both that Compal infringed and that Compal infringed willfully.  To prove willful infringement, Samsung must persuade you that it is "highly probable" that Compal willfully infringed.

Specifically, Samsung must demonstrate that it is highly probable that:

(A)  Compal had actual knowledge of the '273 patent; and

(B)  Compal had no reasonable basis for believing (1) that Compal's product did not infringe the '273 patent or (2) that the '273 patent was invalid.

In deciding whether Compal committed willful infringement, you must consider all of the facts, which include but are not limited to:

(A)  whether Compal intentionally copied a product of Samsung covered by the '273 patent;

(B)  whether Compal, when it learned of Samsung's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or that it was not infringed;

(C)  whether Compal had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated;

(D)  whether Compal made a good faith effort to avoid infringing the patent; and

(E)  whether Compal relied on a legal opinion that appeared to it to be well-supported and believable

19

and that advised Compal (1) that the product did not infringe the '273 patent or (2) that the '273 patent was invalid.

**INVALIDITY – BURDEN OF PROOF**

      I will now instruct you on the rules you must follow in deciding whether Compal has proven that claims 1 and 3 through 7 of the '273 patent are invalid.  To prove invalidity of any patent claim, Compal must persuade you that it is highly probable that the claim is invalid.  I will now instruct you on the invalidity issues that you will have to decide in this case.

**United States District Court**
For the Northern District of California

1

**ANTICIPATION**

2

3      A patent claim is invalid if the claimed invention is not

4    new.  For the claim to be invalid because it is not new, all of its

5    requirements must be in a single previous device or method, or

6    described in a single previous publication or patent.  We call

7    these things "prior art references."  The description in a

8    reference does not have to be in the same words as the claim, but

9    all the requirements must be there, either stated or necessarily

10   implied, so that someone of ordinary skill in the field of

11   microprocessor-based computer systems looking at that one reference

12   would be able to make and use the claimed invention.

13      Here is a list of the ways that Compal can show that a

14   patent claim was not new:

15          (1)  If the claimed invention was already publicly known

16               or publicly used by others in the United States

17               before the inventors made the claimed invention.

18          (2)  If the claimed invention was already patented or

19               described in a printed publication anywhere in the

20               world before the inventors made the claimed

21               invention.  A reference is a "printed publication"

22               if it is accessible to those interested in the

23               field, even if it is difficult to find.

24          (3)  If the claimed invention was already described in

25               another issued US patent or published US patent

26               application that was based on a patent application

27               filed before the inventors made the claimed

28               invention.

(4)     If Samsung and Compal dispute who is a first
inventor, the person who first conceived of the
claimed invention and first reduced it to practice
is the first inventor.  If one person conceived of
the claimed invention first, but reduced to practice
second, that person is the first inventor only if
that person (a) began to reduce the claimed
invention to practice before the other party
conceived of it and (b) continued to work diligently
to reduce it to practice.  A claimed invention is
"reduced to practice" when it has been tested
sufficiently to show that it will work for its
intended purpose or when it is fully described in a
filed patent application.

Since it is in dispute, you must determine a date of
conception for the claimed and allegedly prior inventions.
Conception is the mental part of an inventive act and is proven
when the invention is shown in its complete form by drawings,
disclosure to another or other forms of evidence presented at
trial.

1

United States District Court

For the Northern District of California

### OBVIOUSNESS

2

3      A patent claim is invalid if the claimed invention would
4  have been obvious to a person of ordinary skill in the field at the
5  time the application was filed.  This means that even if all of the
6  requirements of the claim cannot be found in a single prior art
7  reference that would anticipate the claim or constitute a statutory
8  bar to that claim, a person of ordinary skill in the field of
9  microprocessor-based computer systems who knew about all this prior
10  art would have come up with the claimed invention.

11      The claimed invention is not obvious unless there was
12  something in the prior art or within the understanding of a person
13  of ordinary skill in the field that would suggest the claimed
14  invention.  You must be careful not to determine obviousness using
15  the benefit of hindsight.  You should put yourself in the position
16  of a person of ordinary skill in the field at the time the
17  invention was made and you should not consider what is known today
18  or what is learned from the teaching of the patent.

19      Your conclusion about the question whether a claim is
20  obvious must be based on several factual decisions that you must
21  make.  First, you must decide the scope and content of the prior
22  art.  Second, you must decide what difference, if any, exists
23  between the claim and the prior art.  Third, you must decide the
24  level of ordinary skill in the field that someone would have had at
25  the time the claimed invention was made.  Finally, you must
26  consider any evidence that has been presented with respect to the
27  following:

28      (1)   commercial success due to the merits of the claimed

24

United States District Court

For the Northern District of California

1    invention;

2    (2)   a long felt need for the solution provided by the

3          claimed invention;

4    (3)   unsuccessful attempts by others to find the solution

5          provided by the claimed invention;

6    (4)   copying of the claimed invention by others;

7    (5)   unexpected superior results from the claimed

8          invention;

9    (6)   acceptance by others of the claimed invention as

10         shown by praise from others in the field or from the

11         licensing of the claimed invention; and

12   (7)   independent invention of the claimed invention by

13         others before or at about the same time as the named

14         inventor thought of it.

15         The presence of any of these considerations may be an

16   indication that a claimed invention would not have been obvious at

17   the time this invention was made, and the presence of the final

18   consideration may be an indication that the claimed invention would

19   have been obvious at such time.  Although you must consider any

20   evidence of these considerations, the importance of any of them to

21   your decision on whether the claimed invention would have been

22   obvious is up to you.

23

24

25

26

27

28

25

1

### SCOPE AND CONTENT OF PRIOR ART

2

3          Samsung and Compal disagree whether any of the prior art

4  references should be included in the prior art you use to decide

5  the validity of claims 1 and 3 through 7 of the '273 patent.  In

6  order to be considered as prior art to the '273 patent, these

7  references must be reasonably related to the claimed invention of

8  that patent.  A reference is reasonably related if it is in the

9  same field as the claimed invention or is from another field that a

10 person of ordinary skill in the field would look to in trying to

11 solve the problem the named inventor was trying to solve.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

United States District Court

For the Northern District of California

**DIFFERENCES OVER THE PRIOR ART**

In reaching your conclusion whether or not claims 1 and 3 through 7 would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art references and the claimed requirements.

27

**United States District Court**
For the Northern District of California

**LEVEL OF ORDINARY SKILL**

You have heard several references to a person of ordinary skill in the field of microprocessor-based computer systems.  It is up to you to decide the level of ordinary skill in the field of microprocessor-based computer systems.  You should consider all the evidence introduced at trial in making this decision, including:

(1)   the levels of education and experience of persons working in the field;

(2)   the types of problems encountered in the field; and

(3)   the sophistication of the technology.

Samsung contends that the level of ordinary skill in the field was a bachelor of science degree in electrical engineering with more than two years of experience in the field of computer hardware or software design, or an engineer with a master of science degree in electrical engineering or computer engineering and one year in the field.

Compal contends that the level of ordinary skill in the field was a bachelor of science degree in electrical or computer engineering with two or three years of experience.

United States District Court

For the Northern District of California

**DAMAGES - BURDEN OF PROOF**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Compal infringed any valid claim of the '273 patent, you must then determine the amount of money damages to be awarded to Samsung to compensate it for the infringement.

The amount of those damages must be adequate to compensate Samsung for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Samsung has the burden to persuade you of the amount of its damages.  You should award only those damages that Samsung more likely than not suffered.  While Samsung is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Samsung is not entitled to damages that are remote or speculative.

United States District Court

For the Northern District of California

## REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  Yet, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

**United States District Court**
For the Northern District of California

**FACTORS IN SETTING THE REASONABLE ROYALTY**

In deciding what is a reasonable royalty, you may consider the factors that Samsung and Compal would consider in setting the amount Compal should pay.

I will list for you a number of factors you may consider:

(1)   The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

(2)   The rates paid by the licensee for use of other patents comparable to the patent in suit.

(3)   The nature and scope of the licenses, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold.

(4)   The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

(6)   The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as generator of sales of its non-patented items and

the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of the product made under the patent; its commercial success and its popularity.

(9)   The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

(10)  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor and the benefits to those who have used the invention.

(11)  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

(12)  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to all for the use of the invention or analogous inventions.

(13)  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by the infringer.

(14)  The opinion testimony of qualified experts.

(15)  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have

agreed (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

**DATE OF COMMENCEMENT- PRODUCTS**

Damages that Samsung may be awarded by you commence on April 21, 1999.

**United States District Court**
For the Northern District of California

# WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

(1)  the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

(2)  the exhibits which have been received into evidence and

(3)  any facts to which all the lawyers have agreed or stipulated.

**United States District Court**
For the Northern District of California

1
2

### WHAT IS NOT EVIDENCE

3

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**United States District Court**
For the Northern District of California

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    (1)  the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)  the witness' memory;

    (3)  the witness' manner while testifying;

    (4)  the witness' interest in the outcome of the case and any bias or prejudice;

    (5)  whether other evidence contradicted the witness' testimony;

    (6)  the reasonableness of the witness' testimony in light of all the evidence and

    (7)  any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

**DISCREPANCIES IN TESTIMONY**

38

Discrepancies in a witness' testimony or between such witness' testimony and that of other witnesses, if there were any, do not necessarily mean that any witness should be discredited. Failure of recollection is common.  Innocent misrecollection is not uncommon.  Two persons witnessing an incident or a transaction often will see or hear it differently.  You should consider whether a discrepancy pertains to an important matter or only to something trivial.

**United States District Court**
For the Northern District of California

**OPINION EVIDENCE, EXPERT WITNESSES**

        You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

        Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion and all the other evidence in the case.

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

United States District Court

For the Northern District of California

## DUTY TO DELIBERATE

2

3          When you begin your deliberations, you should elect one

4   member of the jury as your foreperson.  That person will preside

5   over the deliberations and speak for you here in court.

6          You will then discuss the case with your fellow jurors to

7   reach agreement if you can do so.  Your verdict must be unanimous.

8          Each of you must decide the case for yourself, but you

9   should do so only after you have considered all the evidence,

10  discussed it fully with the other jurors, and listened to the views

11  of your fellow jurors.

12         Do not be afraid to change your opinion if the discussion

13  persuades you that you should.  But do not come to a decision

14  simply because other jurors think it is right.

15         It is important that you attempt to reach a unanimous

16  verdict but, of course, only if each of you can do so after having

17  made your own conscientious decision.  Do not change an honest

18  belief about the weight and effect of the evidence simply to reach

19  a verdict.

20

21

22

23

24

25

26

27

28

**CONSIDERATION OF EVIDENCE**

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions.  Nothing that I have said or done, however, is intended to suggest what your verdict should be--that is entirely up to you to decide.

**USE OF NOTES**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk or court security officer, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing or orally here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone--including me--how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

United States District Court

For the Northern District of California

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the clerk or court security officer that you are ready to return to the courtroom.

1

United States District Court

For the Northern District of California

**GLOSSARY**

2

3       **Some of the terms in this glossary will be defined in**
4  **more detail in the legal instructions you are given.  The**
5  **definitions in the instructions must be followed and must control**
6  **your deliberations.**

7       **Abstract:  A brief summary of the technical disclosure in**
8  **a patent to enable the US Patent and Trademark Office and the**
9  **public to determine quickly the nature and gist of the technical**
10 **disclosure in the patent.**

11      **Amendment:  A patent applicant's change to one or more**
12 **claims or to the specification either in response to an office**
13 **action taken by a patent examiner or independently by the patent**
14 **applicant during the patent application examination process.**

15      **Anticipation:  A situation in which a claimed invention**
16 **describes an earlier invention and, therefore, is not considered**
17 **new and is not entitled to be patented.**

18      **Assignment:  A transfer of patent rights to another**
19 **called an "assignee" who upon transfer becomes the owner of the**
20 **rights assigned.**

21      **Claim:  Each claim of a patent is a concise, formal**
22 **definition of an invention and appears at the end of the**
23 **specification in a separately numbered paragraph.  In concept, a**
24 **patent claim marks the boundaries of the patent in the same way**
25 **that a legal description in a deed specifies the boundaries of**
26 **land, i e, similar to a land owner who can prevent others from**
27 **trespassing on the bounded property, the inventor can prevent**
28 **others from using what is claimed.  Claims may be independent or**

dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception:  The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings:  The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a patent examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the US Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without

United States District Court
For the Northern District of California

permission of the patent holder, within the United States during
the term of the patent.  Infringement may be direct, by inducement,
or contributory.  Direct infringement is making, using or selling
the patented invention without permission.  Inducing infringement
is intentionally causing another to directly infringe a patent.
Contributory infringement is offering to sell or selling an item
that is a significant part of the invention, so that the buyer
directly infringes the patent.  To be a contributory infringer one
must know that the part being offered or sold is designed
specifically for infringing the patented invention and is not a
common object suitable for non-infringing uses.

Limitation:  A required part of an invention set forth in
a patent claim.  A limitation is a requirement of the invention.
The word "limitation" is often used interchangeably with the word
"requirement."

Nonobviousness:  One of the requirements for securing a
patent.  To be valid, the subject matter of the invention must not
have been obvious to a person of ordinary skill in the field of the
invention at the time of the earlier of the filing date of the
patent application or the date of invention.

Office Action:  A written communication from the patent
examiner to the patent applicant in the course of the application
examination process.

Patent:  A patent is an exclusive right granted by the US
Patent and Trademark Office to an inventor to prevent others from
making, using or selling an invention for a term of 20 years from
the date the patent application was filed (or 17 years from the
date the patent issued).  When the patent expires, the right to

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the US Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the US Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

1    Requirement:  A required part or step of an invention set
2    forth in a patent claim.  The word "requirement" is often used
3    interchangeably with the word "limitation."

4    Royalty:  A royalty is a payment made to the owner of a
5    patent by a non-owner in exchange for rights to make, use or sell
6    the claimed invention.

7    Specification:  The specification is a required part of a
8    patent application and an issued patent.  It is a written
9    description of the invention and of the manner and process of
10   making and using the claimed invention.